IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DEPARTMENT OF EDUCATION, STATE     )
OF HAWAII,                         )        Civ. No. 05-00543 ACK/BMK
                                   )
          Plaintiff,               )
                                   )
     v.                            )
                                   )
E.B., Individually and as          )
Parent of J.B., and Incompetent    )
Minor,                             )
                                   )
          Defendants.              )
_____)


ORDER AFFIRMING ADMINISTRATIVE DECISION WITH CLARIFICATION


I.   BACKGROUND

     A.   Procedural Background

          This action stems from a claim made in an

administrative proceeding pursuant to the Individuals with

Disabilities in Education Act (the "IDEA"), 20 U.S.C. § 1400, et

seq.[1]  The IDEA was enacted by Congress to, among other things,

"ensure that all children with disabilities have available to

them a free appropriate public education that emphasizes special

education and related services designed to meet their unique

_____

     [1]The IDEA was amended effective July 1, 2005, after the
administrative hearing occurred in this case.  Therefore, the
Court will refer to the prior version of the IDEA herein, unless
otherwise noted.  See Lawrence Township Board of Education v. New
Jersey, 417 F.3d 368, 370 (3d Cir. 2005) (amendments to the IDEA
have prospective application only).

needs . . . [and] to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A) and (B) (2000).  The IDEA provides federal money to state and local education agencies to assist them in educating disabled children, on the condition that the state and local agencies implement the substantive and procedural requirements of the IDEA.  See Robb v. Bethel School District #403, 308 F.3d 1047, 1049 (9th Cir. 2002).  The IDEA provides procedural safeguards to permit parental involvement in all matters concerning the child's educational program, including an opportunity for an impartial due process hearing with respect to complaints, and allows parents to obtain administrative and judicial review of decisions they deem unsatisfactory or inappropriate.  Id.

On February 18, 2005, E.B., as the mother of J.B., an incompetent minor, (collectively with the minor, "Defendants" or the "family") filed a Request for Impartial Hearing with the Hawaii Department of Education (the "DOE") pursuant to the IDEA. As a result, administrative hearing proceedings were conducted by a Hearing Officer in the Office of Administrative Hearings of the Department of Commerce and Consumer Affairs of the State of Hawaii.  The administrative proceedings culminated in the Hearing Officer's issuance of Findings of Fact, Conclusions of Law and

Decision on July 21, 2005 (the "Administrative Decision").[2]

On August 22, 2005, the DOE filed a Complaint in this Court, seeking reversal of the Administrative Decision. The DOE filed an Opening Brief on March 7, 2006. Defendants filed an Answering Brief on March 28, 2006. The DOE filed a Reply Brief on April 10, 2006. Defendants submitted a letter notifying the Court of additional authorities on May 4, 2006. The Court held oral arguments on May 15, 2006.

**B.   The Administrative Decision**

The Hearing Officer made detailed findings of fact in the Administrative Decision. As set forth in the Administrative Decision, the Hearing Officer granted the family's motion for directed disposition after the conclusion of the DOE's case in chief, finding that (1) the DOE did not prove by a preponderance of the evidence that FAPE was offered to the student for the 2003-2004 school year and (2) the DOE did not have an operational individualized education plan ("IEP") for student until December 3, 2004, and because there was no IEP that could have been implemented at the beginning of the 2004-2005 school year, the student was denied a free appropriate public education ("FAPE"). See Administrative Decision at 6. Despite this ruling, the

---

[2]The Administrative Decision refers to the child's mother and grandmother as "parents." This Court's use of "parents" will likewise refer collectively to the mother and grandmother. This Court's use of "parent" will refer to the mother exclusively.

hearing continued with the family's case and the parties' written closing briefs.  Id. at 6-7.  The Administrative Decision addresses and makes conclusions based on all of the evidence presented (including evidence presented after the grant of directed disposition).

As a result of the detailed findings of fact made by the Hearing Officer, the Administrative Decision concludes that FAPE was not offered to the student for the 2002-2003, 2003-2004, and 2004-2005 school years.  Id. at 24-26.  For the 2002-2003 school year, the Hearing Officer concluded that FAPE was not offered because there was no IEP and placement in a self-contained special education classroom was not an appropriate placement for the student.  Id. at 26.  For the 2003-2004 school year, the Hearing Officer concluded that FAPE was not offered because the school intended to place the student in a general education classroom for an undefined transition period, but placement in a self-contained special education classroom was not an appropriate placement for the student.  Id. at 25.  For the 2004-2005 school year, the Hearing Officer concluded that FAPE was not offered because an operational IEP was not in place until December 3, 2004, well past the start of the school year.  Id. at 25-26.

The Hearing Officer awarded reimbursement for private placement tuition and payments for student's special education

4

services (i.e, intensive instruction services consultants, the Center for Autism and Related Disorders, Inc., and intensive instructional support) from February 18, 2003 until such time as FAPE is offered to the student.  The Hearing Officer made this award based on his conclusion that (1) the school district's IEPs were not appropriate and (2) the placement of the student in private school was appropriate.  Id. at 27-28.

The Hearing Officer also awarded compensatory education for a period of 18 months, in the following amounts: (1) 2.5 hours of speech and language therapy per week, in 30 to 45 minute sessions, five days a week and (2) two hours of occupational therapy divided into two to three sessions per week.  Id. at 28.

Finally, the Hearing Officer deemed the family to be the prevailing party in the case.  Id. at 29.

## II.   STANDARD

In evaluating an appeal of an administrative decision under the IDEA, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).[3]

---

[3]An amendment to the IDEA, effective July 1, 2005, affected the subsection number at which this provision appears in the statute, but did not affect the text of the provision.  Compare

This statutory requirement "that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."  <u>See</u> <u>Board of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley</u>, 458 U.S. 176, 206 (1982).  Rather, "due weight" must be given to the findings in the administrative proceedings.  <u>Id.</u>

The amount of deference given to an administrative hearing officer's findings is a matter of discretion for the court.  <u>See</u> <u>Capistrano Unified Sch. Dist. v. Wartenberg</u>, 59 F.3d 884, 891 (9th Cir. 1995) (quoting <u>Gregory K. v. Longview Sch. Dist.</u>, 811 F.2d 1307, 1311 (9th Cir. 1987)).  The court must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue, but the court is free to accept or reject the findings in part or in whole.  <u>See</u> <u>Capistrano</u>, 59 F.3d at 891.  When exercising its discretion to determine what weight to give the hearing officer's findings, the court may examine the thoroughness of those findings and accord greater deference when the findings are "thorough and careful."  <u>Id.</u>; <u>Union Sch. Dist. v. Smith</u>, 15 F.3d

---

20 U.S.C. § 1415(i)(2)(B) (in effect prior to July 1, 2005) <u>with</u> 20 U.S.C. § 1415(i)(2)(C) (effective July 1, 2005).  Thus, the Court's analysis on this issue is identical under either version of the statute.

1519, 1524 (9th Cir. 1994).

A court's inquiry in reviewing administrative decisions under the IDEA is twofold.  "First, has the State complied with the procedures set forth in the Act?  And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?  If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more."  Rowley, 458 U.S. at 206-207 (internal footnotes omitted); see also Smith, 15 F.3d at 1524.

## III. DISCUSSION

The DOE asks this Court to reverse the Administrative Decision and vacate an underlying ruling on the statute of limitations that was memorialized in the Administrative Decision. See Opening Brief at 13.  The Court addresses the DOE's arguments in turn below.

### A.    Availability of Compensatory Education

The DOE argues that compensatory education should not have been awarded because Defendants did not specifically request an award of compensatory education in their Request for Impartial Hearing.  See Opening Brief at 5.  The Court disagrees.

In this case, the parties discussed the issue of compensatory education with the Hearing Officer at the pre-hearing conference held on March 3, 2005.  See Order Partially

7

Granting and Partially Denying Respondent's Motion to Dismiss
Issues and Claims Barred by the Applicable Statute of Limitations
at 1-2 (Apr. 18, 2005) ("April 18, 2005 Order"); Letter from
Hearing Officer to Counsel (Apr. 7, 2005).  At that time, the
Hearing Officer clearly indicated that Plaintiffs had requested
an award of compensatory education and that the Hearing Officer
would consider making such an award.  See April 18, 2005 Order at
2.  In a letter dated April 7, 2005 (over one-month prior to the
administrative hearing), the Hearing Officer reiterated his
determination (made at the pre-hearing conference on March 3,
2005) regarding the applicability of the statute of limitations
to the compensatory education issue.  See Letter from Hearing
Officer to Counsel (Apr. 7, 2005).

        The DOE has cited no authority for the proposition that
a hearing officer may not award the equitable remedy of
compensatory education where that remedy is not explicitly
referenced in a Request for Impartial Hearing, let alone where
the hearing officer explicitly determines at the pre-hearing
conference that he will consider awarding compensatory education
to the student.[4]  The Court finds that in this case, where the
Hearing Officer clearly articulated at a pre-hearing conference

---

[4]The U.S. Court of Appeals for the Ninth Circuit has
affirmed that compensatory education is an equitable remedy that
may be awarded in IDEA cases.  See Parents of Student W v.
Puyallup Sch. Dist., No. 3, 31 F.3d 1489, 1497 (9th Cir. 1994).

his understanding that the parent requested an award of
compensatory education, and the Hearing Officer indicated at that
conference (and in a subsequent letter and order) that he would
consider making such an award, the Hearing Officer was not barred
from making such an award simply because compensatory education
was not explicitly requested in the Request for Impartial
Hearing.[5]  In reaching this conclusion, the Court need not
address the issue of whether compensatory education is an
available remedy in administrative proceedings where the issue of
compensatory education was not raised by the parties or hearing
officer prior to the hearing.

### B.    Statute of Limitations

At the pre-hearing conference, the Hearing Officer
ruled that "the judicially imposed two-year statute of
limitations would apply to Petitioners' claims for reimbursement.
However, in regard to the Petitioners' claims for compensatory
education, the Hearing Officer further informed the parties that
the Hearing Officer would consider all relevant evidence,
including evidence that may be beyond the two-year statute of
limitations." See April 18, 2005 Order at 1-2.  The Hearing
Officer memorialized this ruling in a letter dated April 7, 2005.

---

[5]The Court makes no comment on how the recent amendment to
the IDEA, effective July 1, 2005, may or may not have affected
its ruling if that amendment were in effect at the time the
Request for Impartial Hearing was made.

See Letter from Hearing Officer to Counsel (Apr. 7, 2005); see also April 18, 2005 Order at 1-2; Administrative Decision at 4.

In the April 18, 2005 Order regarding the DOE's motion to dismiss, the Hearing Officer explained the limitations ruling in more detail, stating that the two-year limitations period provided in Hawaii Revised Statutes ("H.R.S.") § 657-7 is applicable to requests for administrative due process hearings under the IDEA. See April 18, 2005 Order at 5.  The Hearing Officer went on to explain that "[b]ecause of the equitable nature of compensatory education claims, the Hearing Officer is obligated to receive all relevant and otherwise admissible evidence regarding Petitioners' claims for compensatory education, including evidence that may refer to events that occurred more than two years prior to the filing of the Petitioners' request for impartial hearing in the present case." Id.

Defendants' "claims" are that the DOE violated the IDEA by failing to provide FAPE, but Defendants seek (and the Hearing Officer awarded) two types of "relief" or two "remedies" for those claims: monetary reimbursement and compensatory education. The terminology used by the Hearing Officer is confusing in that he refers to reimbursement and compensatory education as separate "claims" rather than as remedies for violation of the IDEA.  To avoid confusion, this Court will refer to reimbursement and

compensatory education as remedies rather than separate claims.[6]

The Court interprets the Hearing Officer's ruling on the statute of limitations, as articulated in the April 18, 2005 Order, to be as follows: a two-year statute of limitations applies to all claims brought by Defendants in the administrative hearing; therefore, Defendants could only seek an administrative hearing on alleged violations of the IDEA that occurred within the two-year period prior to the filing of the Request for Impartial Hearing on February 18, 2005.  However, the Hearing Officer ruled, in fashioning the equitable relief of compensatory education, the Hearing Officer could consider all relevant evidence, including evidence that referred to events that occurred more than two-year prior to the filing of the Request for Impartial Hearing.

The DOE does not challenge the ruling that a two-year statute of limitations applied to the administrative action; rather, the DOE challenges the manner in which the Hearing Officer applied the statute of limitations in this case.  See Reply at 5.[7]  The DOE argues that because the Hearing Officer

---

[6]The Ninth Circuit has made clear that compensatory education is an equitable remedy.  See Parents of Student W, 31 F.3d at 1497.

[7]Since the appealing party, the DOE, does not challenge the Hearing Officer's finding that a two-year statute of limitations applies, the Court will not disturb that ruling.  Cf. S.V. v. Sherwood School District, 254 F.3d 877 (9th Cir. 2001) (finding a two-year statute of limitations under Oregon law applicable to

considered facts dating back to 1999, those facts could have influenced his determination of liability for IDEA violations from 2003-2005.  <u>Id.</u> at 6.

        This Court finds that, pursuant to the two-year statute of limitations, the Hearing Officer was not permitted to base any liability finding on events that occurred prior to February 18, 2003.  However, consistent with that statute of limitations, the Hearing Officer was permitted to consider those prior events for other purposes, such as to provide context to the events beginning on February 18, 2003.  <u>Cf.</u> <u>United States v. Musacchio</u>, 968 F.2d 782, 790 (9th Cir. 1992) (en banc) (in criminal context, finding that "statute of limitations does not bar the introduction of evidence of acts that occurred outside the limitations period" and finding "no support" for defendant's attempt "to convert the statute of limitations from a procedural rule that requires the bringing of a complaint within a certain time after the completion of a crime to a rule that restricts introduction of evidence"); <u>N.L.R.B. v. United Brotherhood of Carpenters and Joiners of America, Local 745, AFL-CIO</u>, 450 F.2d

_____

request for a due process hearing on a claim arising under the IDEA); <u>Holmes v. Dept. of Education</u>, 234 F. Supp. 2d 1156 (D. Haw. 2002) (finding a two-year statute of limitations under Hawaii law applicable to a complaint for attorneys' fees brought pursuant to the IDEA); <u>Patricia N. v. Lemahieu</u>, 141 F. Supp.2d 1243, 1250 (D. Haw. 2001) (finding a two-year statute of limitations under Hawaii law applicable to a complaint seeking review of an administrative decision pursuant to the IDEA).

1255, 1256 (9th Cir. 1971) (in civil context, noting that statute of limitations is not a rule of evidence; finding that evidence of events outside the statute of limitations cannot constitute grounds for violation of National Labor Relations Act, but that such evidence can be considered for "whatever effect it might have in throwing light on the specific conduct within the period in issue").

Likewise, while the Hearing Officer was not permitted to award reimbursement to the parent for money spent prior to February 18, 2003, it would have been consistent with the statute of limitations for the Hearing Officer to consider those prior events for some other limited purpose, such as to provide context to the parent's monetary expenditures.  Similarly, the Court finds that pursuant to the two-year statute of limitations, equitable compensation was not permitted to be awarded for violations of the IDEA that took place prior to February 18, 2003.  However, the Hearing Officer was free to consider events prior to that date for some limited purpose, such as for putting the post-February 18, 2003 violations in context and/or determining what the most appropriate equitable relief for the post-February 18, 2003 violations would be.  The Court declines to adopt the DOE's reasoning that a bifurcated hearing (separating the liability phase from the award phase) is required in IDEA hearings.  <u>See</u> Reply at 7, n.6.

Although it is not entirely clear from the April 18, 2005 Order, the Court finds that the finding of liability and award of reimbursement and compensatory education contained in the Administrative Decision were appropriately based only on events that took place on or after February 18, 2003.[8] Considering the pre-February 18, 2003 evidence only for the proper purposes described above, reimbursement of the student's tuition and payments from February 18, 2003 until such time as FAPE is offered to student, combined with 18 months of compensatory education (for the hours and intervals required by the Hearing Officer), is an appropriate award, well-supported by the evidence in this case, and designed to ensure that the student is appropriately educated within the meaning of the IDEA. See Parents of Student W, 31 F.3d at 1497.[9]  Moreover, even

---

[8]For example, the Hearing Officer found that the student was denied FAPE for the 2002-2003, 2003-2004, 2004-2005 school years - all school years for which at least part of the school year fell within the two-year period in question.  Also consistent with the two-year statute of limitations, the Hearing Officer only granted reimbursement to the parent for expenses incurred on and after February 18, 2003.

[9]As discussed in the Administrative Decision, the student's treating child psychologist, Margaret R. Koven, Psy. D., testified at the hearing that the student was one of those only five to ten percent of children that could achieve a complete recovery from his diagnosis of autism with proper treatment, including speech and language therapy.  See Administrative Decision at 23-24.  She also testified that it was her opinion that 18 months of therapy, of the types and amounts awarded by the Hearing Officer, would enable the student to resolve his deficits.  Id. at 24.  This evidence, which the Hearing Officer found to be credible and persuasive, strongly supports the award

excluding from <u>any</u> consideration all evidence of any events that occurred prior to February 18, 2003, this Court finds that the remaining evidence supports the Hearing Officer's findings of liability and award.

For these reasons, the DOE's challenge to the application of the statute of limitations to the compensatory education remedy fails.  The Administrative Decision is clarified by this Court only to the extent necessary to make clear that, pursuant to the statute of limitations, no finding of liability is based on evidence of events prior to February 18, 2003, but evidence of those prior events may have been considered for other limited purposes.

To the extent that the family in its Answering Brief now asks this Court to find that a six-year statute of limitations applies to some or all of the claims, the Court

---

of 18 months of compensatory education.  <u>Id.</u> at 23-24.  This Court finds it appropriate to afford deference to the Hearing Officer's determination of the testimony's credibility and persuasiveness, particularly given the thoroughness and carefulness of the Hearing Officer's factual findings.  <u>See</u> <u>Capistrano</u>, 59 F.3d at 891.  Accordingly, this Court finds that 18 months of compensatory education, of the types and amounts awarded in the Administrative Decision, is an appropriate equitable remedy for the educational deficit created by the DOE's failure to provide FAPE to the student beginning on February 18, 2003.  <u>See</u> <u>Reid v. District of Columbia</u>, 401 F.3d 516, 523 (D.C. Cir. 2005) ("compensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student") (quoting <u>G. ex rel. RG v. Fort Bragg Dependent Schs.</u>, 343 F.3d 295, 309 (4th Cir. 2003)).

declines to reach the issue for two reasons.  First, the family did not appeal the Administrative Decision, so the Court will not permit it to raise a new challenge to the findings or conclusions now, in its Answering Brief.[10]  Second, to the extent the family's argument is meant to rebut the DOE's challenge to the manner in which the Hearing Officer applied the two-year statute of limitations, the argument is not necessary for the Court to reach because the Court has already found that under the two-year statute of limitations, the Hearing Officer correctly awarded compensatory education to Defendants.

### C.   Standing

The DOE argues that Defendants lack standing to obtain services under the IDEA (and thus lacked standing to request an impartial due process hearing) because the mother refused to consent to the provision of special education.  See Opening Brief at 8-9.  The DOE cites 20 U.S.C. §§ 1414(a)(1)(D)(i)(II) and (III), as amended effective July 1, 2005, as support for its argument that Defendants lack standing.  This Court will not consider those sections of the statute because they were not in effect when Defendants filed the Request for Impartial Hearing.[11]

---

[10]See, supra, footnote 7.

[11]The version of the IDEA that was in effect contained the following provision for consent:
>     The agency proposing to conduct an initial evaluation
>     to determine if the child qualifies as a child with a
>     disability as defined in section 1401(3)(A) or

The DOE appropriately points to a regulation that requires parental consent to be obtained before initial provision of special education and related services to a child with a disability.  See 34 C.F.R. § 300.505.[12]  The regulation also states that the "public agency may not use a parent's refusal to consent to one service or activity . . . to deny the parent or child any other service, benefit, or activity of the public agency."  34 C.F.R. § 300.505(e).

The DOE presented contradictory evidence regarding what consent the mother was asked to provide and what consent was actually provided.  See, e.g., Transcript of Admin. Hearing at 611 (testimony regarding representation to mother that signing of

---

1401(3)(B) of this title shall obtain an informed consent from the parent of such child before the evaluation is conducted.  Parental consent for evaluation shall not be constructed as consent for placement for receipt of special education and related services.

20 U.S.C. § 1414(a)(1)(C)(i) (2000).  This statutory provision does not support the DOE's argument because the provision does not explicitly require parental consent prior to provision of special education (as opposed to consent prior to evaluation, which the DOE does not dispute was provided).  The DOE has cited no statutory provision, in effect at the time of Defendants' Request for Impartial Hearing, explicitly requiring such consent.

[12]34 C.F.R. § 300.505(a)(1) provides in relevant part:
Subject to paragraphs (a)(3), (b) and (c) of this section, informed parent consent must be obtained before –
(i) Conducting an initial evaluation or reevaluation; and
(ii) Initial provision of special education and related services to a child with a disability.

the IEP was optional); Id. at 915-916 (testimony of A. Gomez, Autism Consultation District Resource Teacher, stating that parental consent for the initial placement into service was received from the mother in the year 2000); Id. at 916 (testimony of A. Gomez stating that the mother signed consent to the initial placement as stated in the child's IEP, but that mother did not check a box that should have been checked).

This Court affords substantial deference to the Hearing Officer's determination that the mother gave consent for the student's eligibility for special education services and placement (and his implicit finding that Defendants were not barred from recovery as a result of some alleged failure to consent), particularly given the thoroughness and carefulness of the Hearing Officer's factual findings and the Hearing Officer's unique position to assess the credibility of the witnesses.  See Capistrano, 59 F.3d at 891; see also Administrative Decision at 8-9, ¶¶ 7, 14.[13]  The Court finds that credible evidence in this case demonstrates that the student's mother did provide consent

---

[13]To the extent the DOE is arguing that the IDEA requires a parent to consent to inadequate placement of a student in order to maintain standing to request an impartial hearing, the Court does not agree with that reading.  Defendants' complaint was that the DOE did not conduct an adequate evaluation, create an adequate individualized education plan ("IEP"), or offer appropriate placement to the student.  See Request for Impartial Hearing at 1-2.  If there was no adequate evaluation, IEP, or offer of appropriate placement, there could be no adequate provision of special education pursuant to the IDEA.

for the student's initial placement into special education
services.  See, e.g., id. at 915-916 (testimony of A. Gomez
stating that parental consent for the initial placement into
service was received from the mother in the year 2000);
Petitioners'/Defendants' Administrative Record Exhibit 5.
Accordingly, this Court finds that Defendants had (and continue
to have) standing to bring the administrative action for
violation of the child's right to FAPE.

### D.   Insufficient Offer of FAPE

The DOE argues in its Reply Brief that the
Administrative Decision lacks any findings that demonstrate the
DOE's offer of FAPE was insufficient.  See Reply Brief at 3-4.
In particular, the DOE argues that the Hearing Officer's
conclusion that, in the 2003-2004 school year, "the Home School
did not intend to place Student in the general education
classroom until after an undefined transition period" is
speculative because the student never actually attended the
public school.  See Administrative Decision at 25; Reply Brief at
4 and n.3.  Once again, the DOE's argument lacks merit.

The Hearing Officer concluded that placement in a fully
self-contained special education classroom was not an appropriate
placement for the student.  See Administrative Decision at 25.
The Court agrees with this conclusion, based on the testimony of
Margaret R. Koven, Psy. D., the student's treating child

19

psychologist.  The Hearing Officer also found and concluded that the public school sought to place the student into just this type of fully self-contained special education classroom for some unidentified transition period for the 2003-2004 school year. See Administrative Decision at 15-16, 25.  Again, the Court agrees with this finding based on the evidence.  See Petitioners'/Defendants' Administrative Record Exhibit 62 at 413 (letter from special education teacher informing mother that student's IEP was modified to reflect that the student would be in the special education classroom for the 2003-2004 school year).  Based on these findings and conclusions, the Hearing Officer reasonably concluded that FAPE was not offered to the student for the 2003-2004 school year.

Since placement of the student into a fully self-contained classroom for some unidentified period of time would have been an inappropriate educational setting, and such placement was offered to the student, the DOE did not offer FAPE to the student for the 2003-2004 school year.  The fact that the mother refused this inappropriate placement does not somehow make the mother's claim speculative.  Cf. Sch. Comm. of the Town of Burlington, Massachusetts v. Dept. of Education, 471 U.S. 359, 369-370 (1985) (finding retroactive reimbursement for private school tuition is appropriate where parents disagreed with proposed IEP and chose to place student in private school while

pursuing administrative review of proposed IEP).

The Hearing Officer's conclusions that FAPE was not offered for the 2002-2003, 2003-2004, or 2004-2005 school years are supported by an independent reason as well: the DOE did not present any evidence that it had IEPs in place at the beginning of these school years.  The DOE presented no evidence of any IEP for the 2002-2003 or 2003-2004 school years.[14]  The DOE presented no evidence of an IEP that could have been implemented for the start of the 2004-2005 school year; an IEP for the student was not in place until December 3, 2004.  The DOE's failure to have an IEP in place at the beginning of each school year resulted in denial of FAPE.  See 20 U.S.C. § 1414(d)(2)(a) (1999) (requiring educational agency to have IEP in effect at the beginning of the school year); see also Gadsby v. Grasmick, 109 F.3d 940, 950 (4th Cir. 1997) (IDEA is violated when educational agency fails to develop an IEP for student prior to the beginning of the school year).

Accordingly, the Court agrees with the Hearing Officer's findings and conclusions that the DOE did not make a sufficient offer of FAPE to Defendants.

---

[14]Although the family's exhibits contained documents related to the IEP for the 2003-2004 school year, that evidence was not received until after the start of the family's case, after the family had moved for a directed verdict.  See Administrative Decision at 6 and 25, n.2.  As discussed above, the IEP was inadequate because it sought to place the student in a fully self-contained educational classroom for some period of time.

**E.    The DOE's Remaining Arguments**

The Court finds the DOE's remaining arguments to be without merit.  First, the DOE argues that the student has no right to special education because he was never enrolled in public school.  <u>See</u> Opening Brief at 10; <u>see also</u> 34 C.F.R. § 300.454 ("No private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school.").  The evidence here demonstrates that the parent repeatedly sought to enroll the student in public school, but placed him in private school while they believed he was not being offered an appropriate education in the public school.  The IDEA does not prohibit a parent from placing her child in a private school if the parent does not agree with the proposed IEP, and then continuing to pursue an adequate IEP with the public school system and/or seeking administrative review of the school system's decision.  <u>See</u> <u>Sch. Comm. of the Town of Burlington, Massachusetts</u>, 471 U.S. at 369-370 (finding retroactive reimbursement for private school tuition is appropriate where parents disagreed with proposed IEP and chose to place student in private school while pursuing administrative review of proposed IEP).

Second, the DOE argues that under 34 C.F.R. § 300.403(d), the Hearing Officer erred in awarding reimbursement

for past private school tuition because the mother did not notify the DOE that they were removing the student from public school. See Opening Brief at 10.  Even assuming the regulatory provision applies to Defendants in this case, it does not bar an award of reimbursement for past private school tuition because it only states that the cost of reimbursement "may be reduced or denied" in certain enumerated circumstances.  See 34 C.F.R. § 300.403(c) and (d).  Thus, this regulation cannot (by its terms) prohibit a reimbursement award made in the Administrative Decision or require any reduction of the reimbursement award, it only permits reduction or denial of an award in some circumstances.  Moreover, this Court finds the reimbursement award in this case to be appropriate based on the evidence - the student was not offered a free appropriate public education by the DOE despite requests by the parents, and as a result, the parents placed the student in private school where an appropriate education was available.

Third, the DOE argues that the Administrative Decision is somehow improper based on 34 C.F.R. § 300.400, which states that 34 C.F.R. §§ 300.401-300.402 only apply to students who have been placed in a private school by a public agency.  See Opening Brief at 11.[15]  The DOE's argument is misplaced, as the Hearing

---

[15]34 C.F.R. § 300.401 deals with the responsibility of a state educational agency that has placed a child into private school.  34 C.F.R. § 300.402 deals with implementation of the state agency's responsibilities where that agency has placed a child into private school.

Officer did not rely on 34 C.F.R. §§ 300.401 or 300.402 in making his findings or conclusions.  The Hearing Officer did not find that the DOE placed the student into private school, nor did the Hearing Officer find that the DOE had any duty to the student pursuant to 34 C.F.R. §§ 300.401-300.402.

## IV.  CONCLUSION

The Court finds by a preponderance of the evidence that the DOE violated the student's right to FAPE beginning on February 18, 2003, for the 2002-2003, 2003-2004, and 2004-2005 school years.  The Court finds the awards made in the Administrative Decision to be appropriate in this case.  Accordingly, the Administrative Decision is affirmed in its entirety with the clarification that pursuant to the statute of limitations, no finding of liability is based on evidence of events prior to February 18, 2003, but evidence of those prior events may have been considered for other limited purposes.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 15, 2006.



_____
Alan C. Kay
Sr. United States District Judge

Dept. of Education v. E.B., Civ. No. 05-00543 ACK/BMK, ORDER AFFIRMING ADMINISTRATIVE DECISION WITH CLARIFICATION.

24